DAVIS, Appellant,

v.

DAVIS, Appellee.

[Cite as *Davis v. Davis*, 167 Ohio App.3d 319, 2006-Ohio-2393.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 2005–G–2646.

Decided May 12, 2006.

Roger L. Kleinman, for appellant.

Donald Navatsyk, for appellee.

WILLIAM M. O'NEILL, Judge.

{¶ 1} Appellant, Linnette Davis ("Davis"), appeals from the judgment entry of the Geauga County Common Pleas Court finding her in contempt for failure to notify the Geauga County Child Support Enforcement Division ("CSED") of changes of status to her children's schooling. On review, we affirm the judgment of the trial court.

{¶ 2} Davis and her ex-husband, Gary Davis, were divorced in 1988. At that time, their three children were age 15, ten, and four. Davis was awarded custody of the three children. Gary Davis was ordered to pay child support for the three children "until a respective child dies, marries, becomes emancipated or reaches the age of eighteen (18) years (provided that they have completed high school), whichever first occurs."

{¶ 3} Davis was further ordered to advise CSED of any changes for which the child support order shall terminate:

{¶ 4} "IT IS FURTHER ORDERED that [Davis] shall immediately notify the CSEA [sic, CSED] of any reason for which the support order shall terminate, including but not limited to death, marriage, emancipation, incarceration, enlistments in the Armed Service, deportation, or change of legal or physical custody of the children."

{¶ 5} In 2003, Gary Davis filed a motion to have Davis held in contempt for failing to abide by the notice requirements for termination of child support.

{¶ 6} In his motion for contempt, Gary Davis asserted that Davis had defrauded the court by submitting false documents to the court and CSED with respect to the dates their two youngest children had withdrawn from school.

{¶ 7} Melanie is the middle child. She turned 18 on July 31, 1996, though she withdrew from the high school she was attending on November 1, 1995. Davis advised the court that her actual withdrawal date was June 11, 1997.

{¶ 8} Christina is the parties' youngest child. She turned 18 on December 27, 2001. Davis signed an affidavit with the child-support agency that she had withdrawn from school as of April 15, 2002, when in fact she had withdrawn on October 17, 2000.

{¶ 9} In addition to a finding of contempt, Gary Davis was seeking repayment for child support payments he had made for the periods of time Melanie and Christina were not actually enrolled in high school.

{¶ 10} The matter was heard by a magistrate in 2004. The magistrate issued a decision that found that Melanie had enrolled in the American School on November 1, 1995, and that Christina enrolled for GED classes after withdrawing from high school, but that she was not enrolled in school as of December 27, 2001, her 18th birthday. The American School is an organization that creates instructional materials for home-schooled students and long-distance learning and is accredited by the state of Illinois. The magistrate further found that the American School was not an accredited high school for purposes of R.C. 3103.03(B) and that Gary Davis was entitled to have $2,763 returned to him as overpayments of child support for Melanie and Christina.

{¶ 11} Davis filed objections to the magistrate's decision, without filing a transcript of the proceedings before the magistrate. She asserted that Melanie's program of home-school instruction in the American School should be recognized as one that qualifies under R.C. 3103.03. On April 5, 2004, the trial court overruled Davis's objections and upheld the finding of contempt, stating:

{¶ 12} "This court finds that in order for a school to be 'recognized and accredited' as set out in Ohio Revised Code 3103.03(B), the school must be approved by the state of Ohio. The fact that the American School is accredited by the State of Illinois Board of Education does not make it recognized and accredited by the State of Ohio."

{¶ 13} Davis was ordered to serve five days in jail unless she purged the contempt by paying Gary Davis the full amount of his overpayments of child support plus processing fees. Davis appealed the trial court's order to this court.

{¶ 14} This court raised the issue that the order being appealed from was not a final order, because a contempt judgment is not a final, appealable order as long as Davis, the contemnor, has an opportunity to purge herself of contempt. Relying on this court's decision in *Chester Twp. Bd. of Trustees v. Baumgardner*, this court dismissed Davis's appeal on August 23, 2004.[1]

---

1. *Davis v. Davis*, 11th Dist. No. 2004–G–2572, 2004-Ohio-4390, 2004 WL 1872767, at ¶ 6, citing *Chester Twp. Bd. of Trustees v. Baumgardner*, 11th Dist. No. 2002–G–2430, 2003-Ohio-4361, 2003 WL 21962566, at ¶ 12.

{¶ 15} Thereafter, Gary Davis filed a motion to impose the jail sentence in the trial court, which the trial court granted and ordered her to jail; provided that, execution of that sentence could be stayed upon Davis posting sufficient surety and paying Gary Davis part of his overpayment. This order was dated May 19, 2005. Davis did so, and the trial court granted a stay of execution of her sentence pending appeal. Davis filed another notice of appeal to this court on June 13, 2005.

{¶ 16} Following this second appeal to this court, Davis filed a motion to stay the appeal and remand the matter for the purpose of allowing the trial court to consider the merits of a motion for relief from judgment. Davis represented to this court that she was contemplating filing a motion for relief from judgment in order to bring to the attention of the trial court the fact that the American School is accredited by the Ohio Department of Education. On October 17, 2005, this court overruled the motion to stay the appeal and remand, because Davis had not yet actually filed a motion for relief from judgment in the trial court.

{¶ 17} Davis filed in the trial court a motion for relief from judgment or order on October 24, 2005.

{¶ 18} On March 15, 2006, this court remanded this matter to the trial court for the purpose of the trial court ruling on Davis's motion for relief from judgment or order. The trial court denied the motion for relief from judgment or order as untimely on March 17, 2006.

{¶ 19} Davis has raised a single assignment of error, as follows:

{¶ 20} "The trial court erred as a matter of law when it ruled the phrase 'any recognized and accredited high school' found in Ohio Rev.Code Ann. § 3103.03(B) does not include the American School, accredited by the Illinois State Board of Education."

{¶ 21} " 'The primary interest involved in a contempt proceeding is the authority and proper functioning of the court.' * * * Absent an abuse of discretion, a trial court's decision in a contempt proceeding will not be reversed." [2]

{¶ 22} Davis was adjudged guilty of contempt by the trial court on April 5, 2004. In this court's memorandum opinion of August 23, 2004, we held that "a contempt citation is not a final appealable order if it only imposes a conditional punishment coupled with an opportunity to purge the contempt. Until the

---

2. *Slagle v. Slagle,* 11th Dist. No. 2004–L–119, 2005-Ohio-4330, 2005 WL 2002272, at ¶ 10, quoting *Denovchek v. Trumbull Cty. Commrs.* (1988), 36 Ohio St.3d 14, 16, 520 N.E.2d 1362.

opportunity to purge has been removed, there is no final appealable order." [3] Davis asserts in her notice of appeal that the order of April 5, 2004, became a final order as of May 19, 2005, when the opportunity to purge herself of contempt was removed. We agree that the contempt order of April 5, 2004, became a final order on May 19, 2005. Therefore, we find that Davis's filing of a notice of appeal on June 13, 2005 was timely.

{¶ 23} The trial court's basis for adjudging Davis to be in contempt was her failure to notify CSED of events in her children's lives that would terminate Gary Davis's obligation to pay child support. Referring to the 1988 judgment entry of the trial court, Davis was to notify CSED of "any reason for which the support order shall terminate."

{¶ 24} Gary Davis argued in his motion for contempt that events giving rise to termination of child support occurred no later than July 31, 1996 for Melanie, since that was her 18th birthday and she was not enrolled in an accredited school, and no later than December 27, 2001, for Christina, since that was her 18th birthday and she was no longer enrolled in an accredited school.

{¶ 25} In her decision, the magistrate agreed with Gary Davis that the two girls were not enrolled in high school on the dates of their 18th birthdays. She further found that Davis had submitted false documents to the court and CSED, in that Davis asserted that the two girls were both enrolled in school beyond their 18th birthdays. Finally, she found that enrollment in the American School did not qualify as enrollment in an accredited school, because it was not accredited for purposes of R.C. 3103.03(B). That statute provides as follows:

{¶ 26} "Notwithstanding section 3109.01 of the Revised Code and to the extent provided in section 3319.86 of the Revised Code, the parental duty of support to children shall continue beyond the age of majority as long as the child continuously attends on a full-time basis any recognized and accredited high school."

{¶ 27} Davis objected to the magistrate's decision, without filing a transcript of the proceedings before the magistrate. Her objection was based on the assertion that the American School was accredited by the Illinois Board of Education and that this credential should satisfy the requirements of R.C. 3103.03(B). She cited the case of *Brown v. Brown* to the effect that a home-education program qualified as a "recognized and accredited high school" for purposes of that statute.[4] In its judgment entry approving the magistrate's decision, the trial court, in effect, tracked the holding of the *Brown* case when it said in its judgment entry that "in

---

3. (Citation omitted.) *Davis v. Davis,* supra, at ¶ 6.

4. *Brown v. Brown* (Dec. 27, 1995), 7th Dist. No. 94 C.A. 172, 1995 WL 782884.

order for a school to be 'recognized and accredited' as set out in the Ohio Revised Code 3103.03(B), the school must be approved by the state of Ohio."

{¶ 28} The problem that Davis has in this appeal is that the record of the hearing before the magistrate is devoid of evidence that the home-school programs pursued by her daughters were approved by the state of Ohio. Davis's principal argument in this court is that "accreditation" by one state should be self-executing in another state. That is, if the American School is accredited in Illinois, it should also be accredited in Ohio, argues Davis. However, the decided cases in this area do not stress the aspect of accreditation so much as they do approval of the home-school program by the state of Ohio. Therefore, Davis is encumbered by the fact that she did not demonstrate at the magistrate hearing that the American School was approved by the state of Ohio. This point may be illustrated by two other cases decided in Ohio.

{¶ 29} The first case is that of *Gatchel v. Gatchel,* where the father-obligor for child support contended that he should not be obligated to continue to pay child support when his 18–year–old son was enrolled in a home-school program and not enrolled in an accredited high school.[5] The Third Appellate District analyzed the situation thus:

{¶ 30} "Generally, a parent's duty of support to a child ends when the child reaches the age of majority. R.C. 3103.03. Pursuant to R.C. 3109.01, a child reaches the age of majority at age 18. Statutory law, however, also provides that child-support orders should remain in effect after a child's 18th birthday when the child 'continuously attends on a full-time basis any recognized and accredited high school.' R.C. 3119.86." [6]

{¶ 31} That court went on to review the extensive requirements to excuse a student from compulsory school attendance under a home-schooling program. Under Ohio law, compulsory school attendance is required for children under 18 years of age.[7] The court observed:

{¶ 32} "Parents in Ohio who desire to educate their children at home rather than in a public or private school must submit extensive information about the proposed home-education program to the superintendent of their local school district prior to excusal from school attendance." [8]

---

5. *Gatchel v. Gatchel,* 159 Ohio App.3d 519, 2005-Ohio-148, 824 N.E.2d 576.

6. Id. at ¶ 7.

7. R.C. 3321.01.

8. *Gatchel v. Gatchel,* supra, at ¶ 12, citing R.C. 3321.04 and Ohio Adm.Code 3301–34–03.

{¶ 33} The court then cited with approval the language from the second case used here for illustration, that of *Brown v. Brown* from the Seventh Appellate District, which held that " 'recognized and accredited' as set out in R.C. 3103.03(B) means 'as approved by the state.' " [9]

{¶ 34} The court in *Gatchel* finally observed that "an adequate education through home-schooling" that is approved by the state will satisfy the requirement to attend a "recognized and accredited" school for purposes of R.C. 3119.86:

{¶ 35} "[I]t is clear that the legislature has demonstrated a purpose to excuse a child from compulsory attendance at the school district where the parents of the child reside when an adequate education through home-schooling is available[.] * * * [W]e determine that an *approved* home-education program becomes the legal equivalent of attending a public, private, or parochial school for purposes of a child-support obligation under R.C. 3119.86." [10]

 {¶ 36} A review of the *Gatchel* and *Brown* cases indicates that the critical element in deciding whether child support should continue for a child who is being home-schooled is not whether the home-school program is "recognized and accredited," but whether "it is approved by the state." The court in *Brown*, for example, pointed out the difference between chartered high schools that were accredited and those that were sanctioned by the state. Only one-third of such schools were accredited by a reputable accrediting agency, while all of them were approved by the state. [11] Lacking a statutory definition of the terms "recognized and accredited," the court in *Brown* opted not to tie the decision as to whether child support should continue for one enrolled in a home-school program to the decision of an outside agency, but chose instead to construe that phrase to mean that the program had obtained state approval. [12]

{¶ 37} Notably, the parent in the *Brown* case "received acknowledgment from the appropriate agency that the program complied with the standards of Ohio Adm.Code 3301–34." [13] In the *Gatchel* case, the court found that "evidence was presented that [the appellee] had requested [the child] be home-schooled for the 2003–2004 school year and that Bluffton Exempted Village Schools had granted the request." [14] In the instant case, nothing in the record reflects that Davis

---

9. Id. at ¶ 17, citing *Brown v. Brown*, supra.

10. (Emphasis added.) Id. at ¶ 19.

11. *Brown v. Brown*, supra, 1995 WL 782884 at *2.

12. Id. at *2.

13. Id. at *1.

14. *Gatchel v. Gatchel*, supra, at ¶ 3.

sought approval for her daughters' American School programs, or that approval was ever received. In the absence of such evidence, we must presume the regularity of the proceedings in the trial court.[15]

{¶ 38} In the trial court, Davis argued two positions that were juxtaposed. In her objections to the magistrate's decision, she argued that the rationale of the *Brown* case should be extended to her situation so as to recognize that the American School, being accredited in Illinois, is an "accredited" school for purposes of R.C. 3103.03(B).

{¶ 39} In a subsequent filing of a motion for relief from judgment, to which were attached materials from the Ohio Superintendent of Instruction, Davis argued that the American School was accredited by the state of Ohio. The materials do not indicate that the American School was an accredited institution on July 31, 1996, when Melanie was enrolled there and turned 18 years of age, or on December 27, 2001, when Christina was taking GED classes and turned 18 years of age. Moreover, the materials enclosed with the motion do not show that the American School was accredited by the state of Ohio, but only accredited by the state of Illinois. Finally, the motion for relief from judgment was ruled to be untimely by the trial court. However, even if we were to give those materials the best reading in favor of Davis, the most that they demonstrate is that the American School program has the approval of the state of Ohio. However, this reading would still not solve the problem that Davis has, which is that the record does not reflect that Davis complied with the statutory and regulatory requirements of R.C. 3321.04 and Ohio Adm.Code 3301–34–3 to get the approval of the superintendent of her local school district to enroll Melanie and Christina in the American School programs. Given that Gary Davis, her ex-husband, did not know that their daughter, Melanie, was disenrolled from high school eight years before he filed his motion for contempt, the more reasonable conclusion is that Davis operated outside the statutory and regulatory framework to get state approval and unilaterally decided to enroll their daughters in the American School, even without state approval.

{¶ 40} Davis further argues in this assignment of error that the trial court's decision impinges upon the constitutional right to travel freely throughout the United States, citing *State v. Burnett*.[16] In support of this argument, she submits that a parent who relocates to another state would lose child support payments, because the out-of-state school is not accredited by the state of Ohio; or a parent who sends a child to a boarding school out of state would likewise forfeit child

---

15. *Crites v. Crites* (March 9, 2001), 11th Dist. No. 2000–P–0001, 2001 WL 252803.

16. *State v. Burnett* (2001), 93 Ohio St.3d 419, 755 N.E.2d 857.

support payments. This kind of argument also implicates an equal protection analysis.[17]

{¶ 41} This secondary argument lacks substance because (1) it assumes that attendance at an out-of-state school is contingent upon accreditation, instead of approval, by the state of Ohio and (2) the argument is hypothetical and not a part of the record in this case. Moreover, the issue was not raised in the trial court, which means that we will not deal with this issue for the first time on appeal.[18]

{¶ 42} For the foregoing reasons, we find that Davis's assignment of error is without merit.

{¶ 43} The judgment of the trial court is affirmed.

Judgment affirmed.

FORD, P.J., concurs.

O'TOOLE, J., dissents.

COLLEEN MARY O'TOOLE, Judge, dissenting.

{¶ 44} I respectfully dissent from the majority.

{¶ 45} The word "accredit" must be read to mean "to recognize or vouch for as conforming to a standard." *Brown v. Brown* (Dec. 27, 1995), 7th Dist. No. 94 C.A. 172, 1995 WL 782884.

{¶ 46} The phrase "recognized and accredited high school" is clear and unambiguous and must be applied without interpretation. *Wingate v. Hordge* (1979), 60 Ohio St.2d 55, 58, 14 O.O.3d 212, 396 N.E.2d 770. Giving the phrase a clear and unambiguous reading, it becomes evident that appellant's child's attendance at the American School, which is authorized and accredited by the state of Illinois, qualifies her for the exception to the rule that child support ceases at the age of 18.

{¶ 47} I agree that "recognized and accredited" as set out at R.C. 3103.03(B) means as approved by the "state." The "state" connotes the federal or any state government. Ohio maintains compacts with her sister states, to facilitate interstate travel, as well as other matters, including the federally guaranteed right to a free public education. It is absurd to argue that a diploma from Illinois is not as valid as one from Ohio.

---

**17.** See *San Antonio Indep. School Dist. v. Rodriguez* (1973), 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16.

**18.** *State ex rel. Specht v. Bd. of Edn.* (1981), 66 Ohio St.2d 178, 182, 20 O.O.3d 191, 420 N.E.2d 1004.

{¶ 48} The child-support statute does not specify that the "high school" mentioned therein must be approved by the state of Ohio. A parent must pay support under Ohio law until the child is emancipated, obtains the age of majority, or stops attending high school, regardless of where the child attends school.

{¶ 49} The majority's ruling excludes schools outside of this state from validity under the child-support statute if Ohio does not specifically recognize the particular school. This includes charter schools, home schools, boarding schools, and even other public schools when the custodial parent resides in another state. The majority's ruling places an unreasonable restriction and burden on nonresident Ohio parents and their children, requiring them to endure a labyrinthine process of seeking recognition from Ohio for schools already recognized and accredited by other states.

{¶ 50} It is commonly recognized that a child attending an approved out-of-state school is attending "high school" for the purposes of R.C. 3103.03. Possible abuses in any out-of-state education can be monitored and checked through the continuing jurisdiction of the domestic relations court. Penalizing a child in a legitimate, out-of-state home-schooling program is neither fair nor in the child's best interest.

{¶ 51} Home-schooling programs must meet strict criteria and have definite structures. In this case, the child was schooled in such a program, recognized and accredited by Illinois. If the Ohio legislature had wished only Ohio schools to qualify under the child-support statute, it could have defined the phrase "recognized and accredited" in appropriate terms. It did not, leaving the phrase undefined. Consequently, under the rules of statutory construction, this court must give the phrase its clear and unambiguous meaning, and apply the phrase to any accredited and recognized school.

{¶ 52} I respectfully dissent.