DAVIS, APPELLANT, *v.* DAVIS, APPELLEE.

[Cite as *Davis v. Davis,* 115 Ohio St.3d 180, 2007-Ohio-5049.]

(No. 2006–1250—Submitted May 2, 2007—Decided October 10, 2007.)

O'DONNELL, J.

{¶ 1} Linnette Davis appeals from a decision of the Geauga County Court of Appeals that affirmed the trial court's judgment of contempt against her and its order that she reimburse her ex-husband, Gary Davis, for his overpayment of child support for their daughter, Melanie. The narrow issue on this appeal is whether, pursuant to R.C. 3103.03(B), a parent's duty to support a child continues beyond the age of majority when the child is enrolled in a high school recognized and accredited by another jurisdiction but not by the state of Ohio.

{¶ 2} In 1988, the trial court granted a divorce to Linnette and Gary Davis and awarded custody of their daughters, Melanie, born July 31, 1978, and Christina,

born December 27, 1983, to Linnette Davis. The court ordered Gary Davis to pay child support through the Geauga County Child Support Enforcement Agency ("CSEA"), beginning in September 1988 and "continuing until a respective minor child dies, marries, becomes emancipated or reaches the age of eighteen (18) years (provided that said child has completed high school), whichever first occurs." In addition, the court ordered Linnette Davis to immediately notify the CSEA "of any reason for which the support order shall terminate."

{¶ 3} Pursuant to her obligation, Linnette Davis notified the CSEA that Melanie had withdrawn from school as of June 11, 1997, and she later filed a sworn affidavit stating that Christina had withdrawn from school as of April 15, 2002. The effect of these affidavits terminated Gary Davis's support obligation with respect to his two daughters as of those respective dates.

{¶ 4} In 2003, Gary Davis filed a show-cause motion alleging that Linnette Davis had perpetrated a fraud on the court by falsely stating the dates on which their daughters had withdrawn from school. He contended that Melanie and Christina had actually withdrawn from the South Euclid Lyndhurst public school system about the time they reached the age of majority, not almost two years afterwards, as Linnette had claimed in her affidavits, and he sought reimbursement for the child support payments that he had made for his daughters after they became 18.

{¶ 5} The court referred the motion to a magistrate, who held a hearing and thereafter found that records from the South Euclid Lyndhurst School District revealed that Melanie had withdrawn from high school on November 1, 1995, and that Christina had withdrawn on October 17, 2000. As a result, the magistrate determined that Gary Davis had overpaid child support by $2,066.92 for Melanie and by $696.08 for Christina. Although the magistrate found that Melanie had enrolled in a home-education program known as the American School after withdrawing from the South Euclid Lyndhurst public schools, the magistrate concluded that the American School was not an accredited high school as contemplated by R.C. 3103.03(B). Thus, the magistrate recommended that the court hold Linnette Davis in contempt for failing to abide by prior court orders and impose a 15–day sentence of incarceration, to be suspended upon condition that she repay $2,763.00 and costs to Gary Davis.

{¶ 6} Linnette Davis objected to the magistrate's assertion that the American School did not qualify as a "recognized and accredited high school" for purposes of R.C. 3103.03(B), and she submitted evidence that the American School is a private, distance-learning high school recognized by the Illinois Board of Education and accredited by the North Central Association of Colleges and Schools, the Accrediting Commission of the Distance Education and Training Counsel, and the Commission on International and Trans–Regional Accreditation. Thus, she

moved to vacate the magistrate's order for repayment of child support for Melanie.

{¶ 7} The trial court accepted the recommendation of the magistrate, stating that "in order for a school to be 'recognized and accredited' as set out in Ohio Revised Code 3103.03(B), the school must be approved by the state of Ohio. The fact that the American School is accredited by the State of Illinois Board of Education does not make it recognized and accredited by the State of Ohio." The court found Linnette Davis in contempt and sentenced her to five days in jail unless she purged the contempt by repaying Gary Davis $2,066.92 for Melanie and $696.08 for Christina, plus processing fees.

{¶ 8} Linnette Davis paid $696.08 to Gary Davis, posted a bond, and appealed the court order regarding Melanie to the Geauga County Court of Appeals, alleging that the American School is a "recognized and accredited high school" as contemplated by R.C. 3103.03(B).

{¶ 9} The court of appeals, in a two-to-one decision, held, "[T]he critical element in deciding whether child support should continue for a child who is being home-schooled is not whether the home-school program is 'recognized and accredited,' but whether 'it is approved by the state.'" *Davis v. Davis,* 167 Ohio App.3d 319, 2006-Ohio-2393, 855 N.E.2d 104, ¶ 36, citing *Brown v. Brown* (Dec. 27, 1995), Seventh Dist. No. 94 C.A. 172, 1995 WL 782884, and *Gatchel v. Gatchel,* 159 Ohio App.3d 519, 2005-Ohio-148, 824 N.E.2d 576. In reaching this decision, the court of appeals relied on R.C. 3321.04, which (1) compels parents to send their children to a school that meets the standards prescribed by the Ohio Board of Education unless excused by the local superintendent of schools and (2) authorizes the board to promulgate rules governing the approval of home-education programs by the local superintendent. See R.C. 3321.04(A) and Ohio Adm.Code 3301–34–03.

{¶ 10} Consequently, the appellate court affirmed the trial court's judgment of contempt and order for repayment because "the record does not reflect that [Linnette] complied with the statutory and regulatory requirements of R.C. 3321.04 and Ohio Adm.Code 3301–34–3 to get the approval of the superintendent of her local school district to enroll Melanie and Christina in the American School programs." *Davis,* at ¶ 39.

{¶ 11} Linnette Davis appealed from that order, and we accepted discretionary review in order to address a narrow proposition of law: "R.C. 3103.03(B) requires the continuation of child support beyond the age of majority as long as the high school attended is recognized and accredited by any state in the Union." See *Davis v. Davis,* 167 Ohio App.3d 319, 2006-Ohio-2393, 855 N.E.2d 104. Quoting R.C. 3103.03(B), she asserts that even in the absence of approval by the state of Ohio, the American School qualifies as "any recognized and accredited high

school" because it is a home-education program that offers a high school education, and it has been recognized by the state of Illinois and accredited by three educational agencies. Gary Davis did not file a responsive brief.

{¶ 12} Thus, the issue presented concerns a matter of statutory interpretation regarding the legislature's intent in mandating a parental duty of support continuing "beyond the age of majority as long as the child continuously attends on a full-time basis any recognized and accredited high school." R.C. 3103.03(B).

{¶ 13} Legislative intent controls our analysis. In *State ex rel. Russo v. McDonnell*, 110 Ohio St.3d 144, 150, 2006-Ohio-3459, 852 N.E.2d 145, ¶ 37, we stated, " 'In construing a statute, our paramount concern is legislative intent.' " Id., quoting *State ex rel. Musial v. N. Olmsted*, 106 Ohio St.3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, ¶ 23. We further stated that "[i]n order to determine this intent, we must ' "read words and phrases in context according to the rules of grammar and common usage." ' " Id., quoting *State ex rel. Cincinnati Bell Tel. Co. v. Pub. Util. Comm.*, 105 Ohio St.3d 177, 2005-Ohio-1150, 824 N.E.2d 68, ¶ 27, quoting *State ex rel. Lee v. Karnes*, 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 23; see, also, R.C. 1.42.

{¶ 14} This court also explained in *Sharp v. Union Carbide Corp.* (1988), 38 Ohio St.3d 69, 70, 525 N.E.2d 1386, that "[w]here a particular term employed in a statute is not defined, it will be accorded its plain, everyday meaning." Id., citing *State v. Dorso* (1983), 4 Ohio St.3d 60, 62, 4 OBR 150, 446 N.E.2d 449; see, also, *State v. Reeder* (1985), 18 Ohio St.3d 25, 26–27, 18 OBR 21, 479 N.E.2d 280, quoting *Mut. Bldg. & Invest. Co. v. Efros* (1949), 152 Ohio St. 369, 40 O.O. 389, 89 N.E.2d 648, paragraph one of the syllabus, and also citing *Youngstown Club v. Porterfield* (1970), 21 Ohio St.2d 83, 86, 50 O.O.2d 198, 255 N.E.2d 262 ("The courts however will assume the legislature is using a word in its ordinary meaning and our task is to accord ' * * * its common, ordinary and usually accepted meaning in the connection in which it is used * * *.' " [Ellipsis sic]).

{¶ 15} Furthermore, in *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 15, we affirmed that "a court may not add words to an unambiguous statute, but must apply the statute as written." Id., citing *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478; see, also, *Columbus–Suburban Coach Lines, Inc. v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 254 N.E.2d 8 ("it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used"). And as this court stated in *Iddings v. Jefferson Cty. School Dist. Bd. of Edn.* (1951), 155 Ohio St. 287, 290, 44 O.O. 294, 98 N.E.2d 827, "[t]o construe or interpret what is already plain is not interpretation but legislation, which is not the function of the courts." See, also, *Barth v. Barth*, 113 Ohio St.3d 27, 2007-Ohio-973, 862 N.E.2d 496, ¶ 10; *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.*

(1994), 69 Ohio St.3d 521, 524, 634 N.E.2d 611; and *Thompson Elec., Inc. v. Bank One, Akron, N.A.* (1988), 37 Ohio St.3d 259, 264, 525 N.E.2d 761.

{¶ 16} At issue in this appeal is R.C. 3103.03(B), which states, "[T]he parental duty of support to children shall continue beyond the age of majority as long as the child continuously attends on a full-time basis any recognized and accredited high school." Specifically, we are called upon to construe the words "any recognized and accredited high school."

{¶ 17} The legislature has not defined the words "recognized" and "accredited," nor has it manifested any intent to give them a meaning that is particular to this statute; thus, we give them their plain and ordinary meanings. See *Sharp*, 38 Ohio St.3d at 70, 525 N.E.2d 1386, and *Reeder*, 18 Ohio St.3d at 26–27, 18 OBR 21, 479 N.E.2d 280.

{¶ 18} The word "recognize" has several relevant meanings, such as "to acknowledge formally," "to admit as being of a particular status," "to acknowledge the de facto existence of," "to acknowledge in some definite way," and "to admit the fact or existence of." Webster's Third New International Dictionary (1986) 1896. The word "accredited" is defined as "publicly sanctioned or recognized," "officially authorized or recognized: provided with credentials," "officially vouched for or guaranteed as conforming to a prescribed or desirable standard," and, with respect to educational institutions, "approved by an accrediting agency." Id. at 13.

{¶ 19} Importantly, the legislature has chosen to modify "recognized and accredited high school" with the adjective "any." The word "any" means "one or some indiscriminately of whatever kind," "one, no matter what one," "one that is selected without restriction or limitation of choice," "one or some of whatever kind or sort," and "one, some, or all indiscriminately of whatever quantity." Id. at 97. In choosing this adjective, the legislature has manifested its intent that the phrase "recognized and accredited high school" should be construed expansively for purposes of R.C. 3103.03(B). By doing so, it has acknowledged the mobility of individuals in our society, the educational choices available to them, and the possibility that children may move to or otherwise attend high schools that are recognized and accredited in different jurisdictions.

{¶ 20} Had the General Assembly intended that the parental duty of support for a child who has reached the age of majority depends on whether the child attends a high school that has been recognized, accredited, or otherwise approved *in* or *by the state of Ohio*, it could have so specified in R.C. 3103.03(B). Moreover, the legislature could have chosen, in R.C. 3103.03(B), to treat home-education programs differently from traditional high schools and to refer to statutes and rules requiring the approval of home-education programs *by the state of* Ohio or *by the local superintendent*. The legislature has not seen fit to

do so, however, and we may not add such requirements to R.C. 3103.03(B) under the guise of statutory interpretation, for as we stated in *Ritchey Produce Co., Inc. v. Ohio Dept. of Adm. Servs.* (1999), 85 Ohio St.3d 194, 206, 707 N.E.2d 871, "[t]his court is not now, nor has it ever been, a judicial legislature."

{¶ 21} Here, the undisputed evidence in the record demonstrates that the American School is a private, distance-learning high school that has been recognized by the Illinois State Board of Education and accredited by the North Central Association of Colleges and Schools, the Accrediting Commission of the Distance Education and Training Counsel, and the Commission on International and Trans–Regional Accreditation. Thus, because it has been recognized by another state and accredited by three educational agencies, the American School is a "recognized and accredited high school" for purposes of R.C. 3103.03(B),

{¶ 22} In defining the mandatory parental duty of support for a child who is beyond the age of majority and enrolled in high school, the General Assembly has used the expansive phrase "any recognized and accredited high school" and has not required that a high school's recognition and accreditation come only from the state of Ohio. A high school that has been recognized by another state and accredited by non-Ohio entities need not also have been approved by the state of Ohio in order to be a "recognized and accredited" high school as contemplated by R.C. 3103.03(B). Accordingly, the judgment of the court of appeals to the contrary is reversed, and this matter is remanded to the trial court with respect to its contempt citation and other matters that remain.

Judgment reversed
and cause remanded.

Moyer, C.J., Pfeifer, Lundberg Stratton, Pietrykowski and Cupp, JJ., concur.

Lanzinger, J., concurs in judgment only.

Mark L. Pietrykowski, J., of the Sixth Appellate District, sitting for O'Connor, J.

---

McDonald Hopkins Co., L.P.A., and Roger Kleinman, for appellant.