[Cite as *McQuillen v. FeeCorp Indus. Servs.*, 2016-Ohio-1590.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| MICHAEL McQUILLEN | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellant | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 15 CA 36 |
| FEECORP INDUSTRIAL SERVICES | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:    Civil Appeal from the Court of Common
Pleas, Case No.  14 CV 093


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    April 18, 2016


APPEARANCES:

For Plaintiff-Appellant

MARK E. DEFOSSEZ
CURTIS M. FIFNER
THE DONAHEY LAW FIRM
495 South High Street
Suite 300
Columbus, Ohio  43215

For Defendant-Appellee

J. STEPHEN TEETOR
DAVID G. JENNINGS
ISAAC WILES BURKHOLDER
& TEETOR LLC
Two Miranova Place, Suite 700
Columbus, Ohio  43215

*Wise, J.*

{¶1} Plaintiff-Appellant Michael McQuillen appeals the decision of the Court of Common Pleas, Fairfield County, which granted summary judgment in favor of Defendant-Appellee FeeCorp Industrial Services, Inc. in an employer intentional tort action filed by appellant. The relevant facts leading to this appeal are as follows:

{¶2} Appellant McQuillen began working for Appellee FeeCorp in March 2009. One of the services provided by the company is industrial vacuuming of ash and other byproducts. On May 21, 2009, appellant was injured while vacuuming wet crushed coal inside a large chamber at a power and light plant in Aberdeen, Ohio. Appellant was with two other workers in the chamber, all engaged in vacuuming. Another employee was assigned to a "hole watch" position just outside the chamber, and one vacuum truck operator was supposed to stay with the vehicle, located as much as 200 feet away.

{¶3} Appellant recalled that immediately before the accident in question, he had his fingertips wrapped over the front edge of the 6-inch diameter vacuum hose. He was purportedly using his left hand to move the hose back and forth as he sucked up the dust in the power plant. At some point during the vacuuming process, when one of his co-workers moved behind where he was carrying the hose, appellant lost control of the hose, and it sucked up his arm. *See* McQuillen Deposition at 60, 67-71, 76-77.[1]

{¶4} The manufacturer of the vacuum truck unit at issue also made safety equipment to be attached to the hose of the truck. The equipment in question was

---

[1] Appellee's employees were typically given a broom handle to attach to the end of the hose with duct tape to allow their employees to use the hose without having to grab its mouth. (McQuillen Deposition II at 71). Unfortunately, on the day in question, appellee did not provide him with a broom handle. *Id.* at 55. However, the broom handle arrangement is not the focus of appellant's tort claims.

generally referred to as a "safety T," essentially a vacuum brake or vacuum relief device. The safety T is attached between the end of the vacuum hose and the truck. There is additionally a lanyard that is attached to the safety T and controlled by the individual or crew working with the vacuum hose. The supervisor on duty that day, Brian Wilcoxon, specifically recalled: "We usually use them when you're back in - when you're working on multiple levels or something where the operator of the truck and the truck is not visible by the crew is when we use them." Wilcoxon Deposition at 7, 37.

{¶5} Following a dismissal of appellant's first complaint without prejudice in 2013, appellant re-filed his complaint on February 5, 2014 against appellee in the Fairfield County Court of Common Pleas. He therein alleged an employer intentional tort under R.C. 2745.01(C). Appellee filed an answer on March 4, 2014.

{¶6} On December 11, 2014, appellee filed a motion for summary judgment. Appellant filed a memorandum contra on February 10, 2015, and appellee filed a reply on February 26, 2015. Appellee argued that it did not deliberately intend to injure appellant, and that appellant was unable to meet the rebuttable presumption of intent to injure pursuant to R.C. 2745.01(C).

{¶7} On May 19, 2015, the trial court granted appellee's motion for summary judgment.

{¶8} On June 18, 2015, appellant filed a notice of appeal. He herein raises the following sole Assignment of Error:

{¶9} "I. THE TRIAL COURT ERRED BY DETERMINING THAT APPELLANT MCQUILLEN DID NOT SATISFY THE REBUTTABLE PRESUMPTION OF INTENT TO INJURE PURSUANT TO R.C. § 2745.01(C)."

I.

{¶10} In his sole Assignment of Error, appellant contends the trial court erred in granting summary judgment in favor of the employer in light of the "equipment safety guard" language of R.C. 2745.01(C). We disagree.

### Summary Judgment Standard

{¶11} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *See Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *."

{¶12} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party

has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

<u>*Employer Intentional Tort Overview*</u>

**{¶13}** Generally, an intentional tort involves an act committed with the specific intent to injure or with the belief that such injury is substantially certain to occur. *Jones v. VIP Dev. Co.,* 15 Ohio St.3d 90, 95, 472 N.E.2d 1046 (1984), citing 1 Restatement of the Law 2d, Torts, 15, Section 8A (1965). Under the common-law standard set forth in *Fyffe v. Jeno's, Inc.,* 59 Ohio St.3d 115, 118, 570 N.E.2d 1108 (1991), an employee in an action for employer intentional tort could establish intent based on substantial certainty by demonstrating the following:

**{¶14}** "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Id.*

**{¶15}** Subsequent to the *Fyffe* decision, the General Assembly enacted former R.C. 2745.01, in Am.H.B. No. 103, 146 Ohio Laws, Part I, 756, 760, effective Nov. 1, 1995, intending to supersede the common law with a more limited statutory cause of

action. *See Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 495, 2012-Ohio-5685, 983 N.E.2d 1253, 1257, ¶ 19 (2012). However, in *Johnson v. BP Chemicals, Inc.,* 85 Ohio St.3d 298, 306, 707 N.E.2d 1107 (1999), the Ohio Supreme Court held the 1995 version of R.C. 2745.01 "unconstitutional in its entirety." *Id.* at the syllabus.

**{¶16}** The present version of R.C. 2745.01, effective April 7, 2005, now governs employer intentional torts in Ohio. It provides in pertinent part as follows:

(A)    In an action brought against an employer by an employee *** for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B)    As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(C)    Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result. * * *.

**{¶17}** The General Assembly's intent in enacting R.C. 2745.01 was to restrict recovery for employer intentional torts to situations in which the employer "acts with specific intent to cause an injury." *See Stetter v. R.J. Corman Derailment Servs., L.L.C.,*

125 Ohio St.3d 280, 2010–Ohio–1029, 927 N.E.2d 1092, ¶ 26. In other words, "*** absent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system." *Houdek*, *supra*, at ¶25. Under R.C. 2745.01(B), "substantially certain" means that an "employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." Acting with the belief that an injury is "substantially certain" to occur is not analogous to wanton misconduct, nor is it "enough to show that the employer was merely negligent, or even reckless." *Talik v. Fed. Marine Terminals, Inc.,* 117 Ohio St.3d 496, 2008–Ohio–937, 885 N.E.2d 204, ¶17; *Weimerskirch v. Coakley,* 10th Dist. Franklin No. 07AP–952, 2008–Ohio–1681 ¶ 8.

**{¶18}** In sum, R.C. 2745.01 requires specific or deliberate intent to cause injury in order to recover on an employer intentional tort claim. But R.C. 2745.01(C) establishes a rebuttable presumption that the employer intended to injure the worker if the employer deliberately removes a safety guard. *Houdek, supra*, at ¶12.

<u>Equipment Safety Guard Analysis</u>

**{¶19}** In the case *sub judice*, appellant essentially argues that the lanyard-assisted "safety T" arrangement on the hose/truck system was an "equipment safety guard" that appellee had deliberately removed, thus satisfying the rebuttable presumption that appellee intended to injure him per the language of R.C. 2745.01(C).

**{¶20}** There is no present legislative definition of "equipment safety guard" or "deliberate removal" for purposes of R.C. 2745.01(C). As cogently stated by the Sixth District Court of Appeals: "The General Assembly has not manifested any intent to give 'equipment safety guard' or its component terms a technical meaning. There is nothing in

the statute or the case law that suggests the General Assembly intended to incorporate any of the various equipment-specific or industry-specific definitions of guard appearing throughout the administrative or OSHA regulations, or for any agency or regulatory measure to be considered a definitional source." *Fickle v. Conversion Technologies International*, 6th Dist. Williams No. WM-10-016, 2011-Ohio-2960, ¶ 34. Furthermore, "[t]he General Assembly did not make the presumption applicable upon the deliberate removal of *any safety-related device*, but only of an equipment safety guard, and we may not add words to an unambiguous statute under the guise of interpretation." *Fickle*, *supra,* at ¶ 42 (emphasis added), citing *Davis v. Davis*, 115 Ohio St.3d 180, 873 N.E.2d 1305, 2007–Ohio–5049, ¶ 15, 20; *State v. Lowe*, 112 Ohio St.3d 507, 861 N.E.2d 512, 2007–Ohio–606, ¶ 15; *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 340, 673 N.E.2d 1351.

**{¶21}** The *Fickle* court ultimately arrived at the following definition: "[A]s used in R.C. 2745.01(C), an 'equipment safety guard' would be commonly understood to mean a device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment." *Id.* at ¶ 43. This definition was later adopted by the Ohio Supreme Court in *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317. In *Hewitt*, the Court thus rejected a broader interpretation that would include any generic safety-related items, as such a broad interpretation "ignores not only the meaning of the words used but also the General Assembly's intent to restrict liability for intentional torts." *Id.*

**{¶22}** This Court recently addressed an employer intentional tort claim resulting from a workplace accident involving a "skid steer," a type of Bobcat loader vehicle with

accessories for pavement sweeping. *See Beary v. Larry Murphy Dump Truck Serv., Inc.*, 5th Dist. No. 2013CA00240, 2014-Ohio-4333, 20 N.E.3d 359. In determining that a backup alarm on the machine, which was not properly sounding on the day in question, was not an equipment safety guard for purposes of R.C. 2745.01(C), we stated:

> The backup alarm does not shield the operator or bystander from exposure or injury by a dangerous aspect of the skid steer and serves only to alert or warn of the skid steer's approach. An operator or bystander is not shielded from injury by the *mere existence* of the backup alarm. While the backup alarm may alert a bystander before he enters the zone of danger, it does not keep the bystander away from this zone of danger and does nothing to stop the skid steer from operating when an individual gets close to the machine. \*\*\* While the backup alarm may make the skid steer safer, it does not shield the operator or a bystander from exposure to or injury by a dangerous aspect of the skid steer.

**{¶23}** *Id.* at ¶ 17 (emphasis added).

**{¶24}** In the case *sub judice*, based on our review of the record, we concur with the trial court's observation that the "safety T" at issue is a device that can be installed onto the vacuum hose at a point within 50 feet of the opening that allows a user to automatically shut off the hose, meaning that without a safety T in place, the only way to turn off the vacuum process is to get to the truck itself. We find it is conceptually similar to a remote cut-off switch one would find connected to various types of industrial machines. Following our rationale in *Beary*, and assuming *arguendo* there was a deliberate removal by appellee, we find the operating employee is not shielded from injury

by the "mere existence" of the safety T device; instead, a worker's proactive steps to engage it are necessary to take advantage of the safety it provides on an as-needed basis.

**{¶25}** We therefore hold the safety T device in question does not constitute an "equipment safety guard" for purposes of R.C. 2745.01(C). As such, appellant failed to establish a rebuttable presumption pursuant to the statute, and appellee is entitled to a judgment as a matter of law.[2]

**{¶26}** Accordingly, appellant's sole Assignment of Error is overruled.

*Conclusion*

**{¶27}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Fairfield County, Ohio, is hereby affirmed.

By: Wise, J.

Baldwin, J., concurs

Hoffman, P. J., dissents.

JWW/d 0314

---

[2]  Based on our holding, we find moot appellant's additional arguments that appellee's management made a deliberate decision to eliminate the safety T from the vacuum truck system and that the presumption of intent to injure cannot be rebutted for purposes of a motion for summary judgment.

*Hoffman, P. J., dissenting*

**{¶28}** I respectfully dissent from the majority opinion. I find the safety T device is an equipment safety guard for purposes of R.C. 2745.01(C).

**{¶29}** The majority cites this Court's opinion in *Beary v. Larry Murphy Dump Truck Serv., Inc.*, 5th Dist. No. 2013CA00240, 2014-Ohio-4333, in support of its conclusion.[3] I find *Beary* is factually distinguishable, and I would disagree with its result.

**{¶30}** I concede the backup alarm in *Beary* did not keep the bystander away from the zone of danger or cause the skid steer from operating. It served to alert or warn a bystander of the skid steer's approach. While the immediate effect was only to alert or warn, I find the ultimate purpose or effect of the backup alarm was to shield the bystander from injury. I believe the *Beary* Court's interpretation of "shield" was overly restrictive.

**{¶31}** In *Beary,* this Court cited the Ohio Supreme Court's decision in *Hewitt v. L.E. Myers Co.,* 134 Ohio St.3d 199, 2012-Ohio-5317, which held "equipment safety guard" means "a device designed **to shield** the operator from exposure to or injury by a dangerous aspect of the equipment." *Id.* (Emphasis added). The *Hewitt* Court adopted the rationale in *Fickle v. Conversion Technologies, Int'l. Inc.,* 6th District Williams No. WM-10-016, 2011-Ohio-2960, that while an equipment safety guard encompasses something more than an actual physical structure erected between the employee and the danger, it must be a device that is designed **to shield** the operator from exposure to or injury by a dangerous aspect of the equipment." *Id.* (Emphasis added).

---

[3] I did not participate in the *Beary* decision.

**{¶32}** The use of the term "shield" in both *Hewitt* and *Fickle* is as a verb, not a noun. "To shield" connotes "to protect from". I believe the backup alarm was designed to protect/shield a bystander from exposure to the danger of the skid steer backing up.

**{¶33}** More fundamentally, I find the safety T device in the case sub judice was designed to do more than merely alert or warn the operator from danger. It was specifically designed to shield the operator from injury. The fact the operator needs to take a proactive step to engage it on an as-needed basis does nothing to detract from its intended purpose to shield the operator from injury. Accordingly, I respectfully dissent from the majority opinion.