[Cite as *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685.]

HOUDEK, APPELLEE, *v*. THYSSENKRUPP

MATERIALS N.A., INC., APPELLANT, ET AL.

[Cite as *Houdek v. ThyssenKrupp Materials N.A., Inc.,* 134 Ohio St.3d 491,

2012-Ohio-5685.]

*R.C. 2745.01—Employer intentional tort—Absent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system.*

(No. 2011-1076—Submitted June 20, 2012—Decided December 6, 2012.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 95399, 2011-Ohio-1694.

_____

**O'DONNELL, J.**

{¶ 1} ThyssenKrupp Materials N.A., Inc., appeals from a judgment of the Eighth District Court of Appeals that reversed a grant of summary judgment in its favor on claims that one of its supervisors had directed Bruce R. Houdek to work in an aisle of a warehouse where he sustained injuries when a co-worker operating a sideloader struck him. We are asked to consider the impact of a recently enacted statute on our prior case decisions which held employers liable for intentional torts occurring in the workplace when injuries were substantially certain to occur.

{¶ 2} R.C. 2745.01(A), effective April 7, 2005, specifies that an employer is not liable for an intentional tort unless the employee proves that "the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur," defined in Subdivision (B) as acting

"with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death."

**{¶ 3}** The Eighth District Court of Appeals ignored this statutory definition of "substantially certain," concluding it resulted from a scrivener's error, and held that ThyssenKrupp could be held liable for Houdek's injuries if it "objectively believed the injury to Houdek was substantially certain to occur," notwithstanding the lack of proof of a deliberate intent to injure. *Houdek v. ThyssenKrupp Materials N.A.*, *Inc.*, 8th Dist. No. 95399, 2011-Ohio-1694, ¶ 46.

**{¶ 4}** Based upon our review of this record, no evidence exists that ThyssenKrupp deliberately intended to injure Houdek by directing him to work in the warehouse aisle. Accordingly, the judgment of the court of appeals is reversed and the judgment of the trial court entered in favor of ThyssenKrupp is reinstated.

**Facts and Procedural History**

**{¶ 5}** On October 10, 2008, Houdek injured his back putting pieces of copper on a pallet while working at ThyssenKrupp's Cleveland warehouse. He returned to work on October 14, 2008, with light-duty restrictions, and Joseph Matras, the plant manager, asked him to assist in relabeling inventory on warehouse storage racks as part of a transition to a new inventory management system.

**{¶ 6}** Replacing the labels on merchandise required Houdek to work in the same aisles where workers on sideloaders pulled goods from racks 25 feet high. A sideloader moves up and down the aisles with forks protruding toward the merchandise but has the operator facing the rack, rather than the direction of travel. At a shift meeting informing employees about the relabeling process, a sideloader operator, George Krajacic, asked Matras, the plant manager, whether he should rearrange his invoices to avoid pulling merchandise in aisles where relabeling had started, but Matras indicated that this would not be necessary.

**{¶ 7}** The record further reveals that ThyssenKrupp did not provide reflective vests to employees working in dimly lit aisles, did not require the placement of orange safety cones at the end of aisles in which employees were working, and did not provide expandable gates to prevent machinery from entering aisles where employees were working. However, it did direct employees to alert sideloader operators before they began working in a specific aisle.

**{¶ 8}** Houdek told Krajacic, the second-shift sideloader operator, that he would be working in the aisle between racks A and B. After working there for approximately five hours, Houdek heard the whirring sound of an approaching sideloader. Forgetting that Houdek had told him that he would be working in that aisle, Krajacic drove the sideloader down the aisle between racks A and B, a narrow aisle which dead ends at a wall; thus, Houdek had no means of escape, and the sideloader pinned him against a scissor lift he had been using, breaking his leg below the knee and shattering his ankle.

**{¶ 9}** Houdek sued ThyssenKrupp, asserting the company had deliberately intended to injure him by directing him to work in the aisle with knowledge that injury would be certain or substantially certain to occur. ThyssenKrupp moved for summary judgment. The trial court granted the motion and entered summary judgment for ThyssenKrupp, concluding that Houdek failed to show that his employer had intended to injure him.

**{¶ 10}** The Eighth District Court of Appeals reversed, stating that the terms used in R.C. 2745.01(A) are in "harmonic dissonance" with the definition of "substantially certain" in R.C. 2745.01(B) and that the court preferred to believe that "paragraph (B) is a scrivener's error." *Houdek*, 2011-Ohio-1694, ¶ 42. As a result, the appellate court held that an injured employee may prove an employer intentional tort by showing that the employer acted with an intent to injure the employee or with the belief that the injury was substantially certain to occur. *Id.* The court applied an objective test as to what a reasonably prudent

employer would believe and determined that "there are genuine issues of material fact, particularly given the specific supervisory directives to both Houdek and the sideloader operator and the sideloader operator's warning to the warehouse manager, that [ThyssenKrupp] objectively believed the injury to Houdek was substantially certain to occur." *Houdek* at ¶ 45-46.

**Arguments on Appeal**

{¶ 11} ThyssenKrupp relies on this court's recent decisions in *Kaminski v. Metal & Wire Prods. Co.,* 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, and *Stetter v. R.J. Corman Derailment Servs., L.L.C.,* 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, for the proposition that R.C. 2745.01 permits recovery for an employer intentional tort only when the employer acts with the specific intent to cause injury. It maintains that recognizing a scrivener's error in R.C. 2745.01 conflicts with our case law and ignores the intent of the General Assembly to curtail the common law cause of action. Although ThyssenKrupp concedes that intent may be proven by circumstantial evidence, it argues that the court of appeals deviated from the intent-to-injure standard by applying an objective test—what a reasonably prudent employer would believe—rather than a subjective test—what the employer actually believed. ThyssenKrupp maintains that there is no evidence of a specific intent to injure Houdek.

{¶ 12} Houdek notes that R.C. 2745.01(C) establishes a presumption that the employer intended to injure the worker if the employer deliberately removes a safety guard, and he asserts that this presumption should apply in this case, because ThyssenKrupp failed to install better lighting, to require the use of safety cones to alert sideloader operators that Houdek would be working in the aisle, or to provide other protective gear such as reflective vests or expandable gates. Houdek argues that because the subjective mental state is impossible to prove absent a confession, intent to injure may be established through the employer's conduct. Thus, he maintains that there is sufficient evidence that ThyssenKrupp

4

intended to injure him: the company had been warned of the danger posed to workers in the aisles only days before the accident, yet it took no action to safeguard Houdek before directing him to work there.

{¶ 13} Accordingly, we confront the question whether a claimant bringing an employer intentional tort claim is required to prove that the employer acted with a deliberate intent to injure.

### Employer Intentional Tort

{¶ 14} In *Blankenship v. Cincinnati Milacron Chems., Inc.*, 69 Ohio St.2d 608, 433 N.E.2d 572 (1982), this court recognized a cause of action for an employer's intentional tort against its employee, holding that because intentional tort claims do not arise out of the employment relationship, the workers' compensation laws do not provide immunity from suit. The court concluded that "R.C. 4123.74 does not bestow upon employers immunity from civil liability for their intentional torts and an employee may resort to a civil suit for damages." *Id.* at 613.

{¶ 15} Further, in *Jones v. VIP Dev. Co.*, 15 Ohio St.3d 90, 95, 472 N.E.2d 1046 (1984), the court rejected the proposition that an employer's "specific intent to injure is necessary to a finding of intentional misconduct." Relying on Prosser & Keeton, *Law of Torts,* Section 8, at 35-36 (5th Ed.1984) and 1 Restatement of the Law 2d, Torts, Section 8A, at 15 (1965), the court defined "intent" to include not only the specific consequences that an actor desires, but also those consequences that an actor believes are substantially certain to result from the conduct. *Id.* at 94-95. The court therefore held, at paragraph one of the syllabus: "An intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur."

{¶ 16} In response to the court's holdings in *Blankenship* and *Jones,* the General Assembly enacted former R.C. 4121.80 in Am.Sub.S.B. No. 307, 141

Ohio Laws, Part I, 718, 733-737, effective Aug. 22, 1986.  Although former R.C. 4121.80(G)(1) defined "intentional tort" as an act committed with the intent to injure another or committed with the belief that the injury was substantially certain to occur, the statute defined "substantially certain" to mean that the employer had acted "with deliberate intent to cause an employee to suffer injury, disease, condition, or death." 141 Ohio Laws, Part I, at 736.  Thus, the legislature attempted to limit the common law employer intentional tort by eliminating liability for injuries that were substantially certain to occur but were not intended by the employer.

{¶ 17} In *Brady v. Safety–Kleen Corp.*, 61 Ohio St.3d 624, 576 N.E.2d 722 (1991), however, we held: "R.C. 4121.80 exceeds and conflicts with the legislative authority granted to the General Assembly pursuant to Sections 34 and 35, Article II of the Ohio Constitution, and is unconstitutional *in toto*."  *Id.* at paragraph two of the syllabus.  The common law cause of action therefore remained intact.

{¶ 18} We then further clarified the elements of the employer intentional tort in *Fyffe v. Jeno's, Inc.*, 59 Ohio St.3d 115, 570 N.E.2d 1108 (1991):

> (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Id.*, at paragraph one of the syllabus.

6

**{¶ 19}** In response, the General Assembly enacted former R.C. 2745.01, in Am.H.B. No. 103, 146 Ohio Laws, Part I, 756, 760, effective Nov. 1, 1995, and declared in uncodified Section 3 of the act its intent to supersede the common law employer intentional tort with a more limited statutory cause of action. In the 1995 version of R.C. 2745.01, the legislature defined "employment intentional tort" to mean " 'an act committed by an employer in which the employer *deliberately and intentionally* injures, causes an occupational disease of, or causes the death of an employee.' " (Emphasis sic.) *Johnson v. BP Chems., Inc.*, 85 Ohio St.3d 298, 306, 707 N.E.2d 1107 (1999), quoting former R.C. 2745.01(D)(1).

**{¶ 20}** In *Johnson*, this court held the 1995 version of R.C. 2745.01 "unconstitutional in its entirety," *id.* at the syllabus, and stated that "any statute created to provide employers with immunity from liability for their intentional tortious conduct cannot withstand constitutional scrutiny," *id.* at 304.

### R.C. 2745.01

**{¶ 21}** Following that history, the General Assembly enacted the current version of R.C. 2745.01, which provides:

(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

(D) This section does not apply to claims arising during the course of employment involving discrimination, civil rights, retaliation, harassment in violation of Chapter 4112. of the Revised Code, intentional infliction of emotional distress not compensable under Chapters 4121. and 4123. of the Revised Code, contract, promissory estoppel, or defamation.

{¶ 22} The constitutionality of this statute is not questioned in this case. We upheld R.C. 2745.01 against various constitutional challenges in *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, and its companion case, *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, explaining that "the General Assembly responded to this court's previous decisions by eliminating many of the features identified by this court as unreasonable, onerous, and excessive. Thus, in reviewing R.C. 2745.01, we find a more limited statute than those previously held to be unconstitutional." *Stetter* at ¶ 50.

{¶ 23} Nor is there any question as to the intent of the General Assembly when it enacted this statute. In *Kaminski*, we emphasized that "the General Assembly's intent in enacting R.C. 2745.01, as expressed particularly in 2745.01(B), is to permit recovery for employer intentional torts only when an employer acts with *specific intent* to cause an injury, subject to subsections (C) and (D)." (Emphasis added.) *Id.* at ¶ 56. We further indicated:

R.C. 2745.01 appears to harmonize the law of this state with the law that governs a clear majority of jurisdictions.

> "[T]he common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury." (Footnote omitted.) 6 Larson's Workers' Compensation Law (2008), Section 103.03.

(Footnote omitted.) *Kaminski* at ¶ 99-100. Moreover, in *Stetter*, we observed that "R.C. 2745.01 embodies the General Assembly's intent to significantly curtail an employee's access to common-law damages for what we will call a 'substantially certain' employer intentional tort." *Stetter* at ¶ 27.

**{¶ 24}** It is therefore manifest that R.C. 2745.01(B) is not the result of a scrivener's error. As we stated in both *Kaminski* and *Stetter*, the General Assembly intended to limit claims for employer intentional torts to situations in which an employer acts with the "specific intent" to cause an injury to another. *Kaminski* at ¶ 56; *Stetter* at ¶ 26. *See also* 6 *Larson's Workers' Compensation Law*, Section 103.03, 103-7 to 103-8 (2001) (explaining that an employer's "knowingly permitting a hazardous work condition to exist [and] knowingly ordering employees to perform an extremely dangerous job * * * falls short of the kind of actual intention to injure that robs the injury of accidental character" (footnotes omitted)).

**{¶ 25}** In accord with this authority, absent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional

tort, and the injured employee's exclusive remedy is within the workers' compensation system.

{¶ 26} Here, there is no evidence that ThyssenKrupp deliberately intended to injure Houdek when its management directed him to work in the aisle. In his deposition, Krajacic asserted that Matras had disregarded his suggestion that he not pull goods in an aisle while employees worked there and that after the accident, Matras had said he had known that "something like this could happen and * * * didn't do anything about it." However, Matras denied making this statement, and Krajacic further testified that neither he nor management at ThyssenKrupp intended to injure Houdek; rather, Krajacic explained that he had forgotten that Houdek was working in the aisle. Thus, although the evidence shows that ThyssenKrupp may have placed Houdek in a potentially dangerous situation, it does not demonstrate that either management or Krajacic deliberately intended to injure him.

{¶ 27} Further, R.C. 2745.01(C) is not applicable here. That subdivision provides,

> Deliberate removal by an employer of an equipment safety guard * * * creates a rebuttable presumption that the removal * * * was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

The plain meaning of the word "remove" is "to move by lifting, pushing aside, or taking away or off." *Webster's Third New International Dictionary* 1921 (1986). There is no evidence that adequate lighting conditions and safety devices such as orange cones, reflective vests, and retractable gates can be considered "an equipment safety guard" as that term is used in the statute. And even if such

evidence existed, there is no evidence in the record that ThyssenKrupp deliberately *removed* any of these items.

{¶ 28} Here, Houdek's injuries are the result of a tragic *accident*, and at most, the evidence shows that this accident may have been avoided had certain precautions been taken. However, because this evidence does not show that ThyssenKrupp deliberately intended to injure Houdek, pursuant to R.C. 2745.01, ThyssenKrupp is not liable for damages resulting from an intentional tort.

### Conclusion

{¶ 29} The Ohio Constitution vests the General Assembly, not the courts, with the legislative powers of government. Our role, in exercise of the judicial power granted to us by the Constitution, is to interpret and apply the law enacted by the General Assembly, not to rewrite it. R.C. 2745.01 limits claims against employers for intentional torts to circumstances demonstrating a deliberate intent to cause injury to an employee, and because there is no evidence in this record of a tortious act committed by the employer with a deliberate intent to cause Houdek to suffer an injury, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

Judgment reversed.

O'CONNOR, C.J., and LUNDBERG STRATTON, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

I

{¶ 30} The majority opinion is wrong. The majority states that "R.C. 2745.01 limits claims against employers for intentional torts to circumstances demonstrating a deliberate intent to cause injury to an employee," majority opinion at ¶ 29, and frames the issue in this case as whether ThyssenKrupp

Materials N.A., Inc. ("ThyssenKrupp") *deliberately* intended to injure Bruce Houdek. But R.C. 2745.01 does not limit intentional-tort claims against employers to "circumstances demonstrating a deliberate intent to cause injury to an employee." Pursuant to R.C. 2745.01(C), "[d]eliberate removal by an employer of an equipment safety guard * * * creates a rebuttable presumption that the removal * * * was committed with intent to injure another if an injury * * * occurs as a direct result." Only the *removal* of the safety equipment needs to be deliberate under the statute; if the injury flows from the removal of safety equipment, an injured worker needs to prove nothing further as to the employer's intent to successfully prosecute an intentional-tort claim against the employer. The worker need not prove that the employer was *trying* to hurt him—intent is presumed by the removal of safety equipment. That is, the safety equipment must be deliberately removed but the injury need not be deliberately caused for an injured worker to recover pursuant to R.C. 2745.01(C). The majority thus overstates the ruthlessness of R.C. 2745.01.

{¶ 31} R.C. 2745.01(A) presents two ways for an injured worker to successfully prosecute a workplace intentional-tort claim. An employer can be held liable for damages if (1) "the plaintiff proves that the employer committed the tortious act with the intent to injure another" *or* (2) "the plaintiff proves that the employer committed the tortious act * * * with the belief that the injury was substantially certain to occur." R.C. 2745.01(B) applies only to the "substantially certain" portion of R.C. 2745.01(A); it uses the term "deliberate intent" as part of the definition of "substantially certain." It reads: "As used in this section, 'substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." R.C. 2745.01(B).

{¶ 32} Thus, when adding the definition of "substantially certain" to the mix, R.C. 2745.01(A) states that an employer can be held liable for an intentional

tort if the employer acted with an "intent to injure" or with a "deliberate intent to cause * * * an injury."

**{¶ 33}** An intent to injure can be inferred from the facts and circumstances of a particular case; otherwise, an injured worker would be dependent on an employer's confession to make his case. Again, R.C. 2745.01(C) states that an intent to injure can be inferred from the "[d]eliberate removal * * * of an equipment safety guard." In this case, the employer's intent to injure could also be inferred from its behavior in sending an already injured Houdek into a dimly lit, narrow, dead-end aisle where a sideloader would be likely to enter, knowing that it was a dangerous situation. Houdek presented enough evidence that a trier of fact could determine that ThyssenKrupp intended to injure him.

**{¶ 34}** Also, the "[d]eliberate removal * * * of an equipment safety guard" in R.C. 2745.01(C) should include the failure to deploy safety equipment that the employer has on site. For example, in this case, the employer's failure to place a safety cone at the entrance to the aisle in which Houdek was working should satisfy R.C. 2745.01(C). " '[E]quipment safety guard' has a simple meaning: equipment that is used as a safety guard." *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, ¶ 36 (Pfeifer, J., dissenting). Safety cones fit within that definition.

## II

**{¶ 35}** Houdek raised several arguments that, if adopted by the majority, would go a long way toward demonstrating that injured workers still have a right to a remedy for workplace intentional torts. The majority does not, and workers, for the most part, do not. The appellate court below quoted at length from my dissent in *Stetter v. R.J. Corman Derailment Servs., L.L.C.,* 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, in which I lamented the extinguishment of injured workers' right to a remedy for workplace intentional torts. The court wrote, "The appellant * * * lost his leg, lost his job, and will lose his right to fair

recompense, if Justice [Pfeifer's] prediction about the most recent version of R.C. 2745.01 is the correct one." *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 8th Dist. No. 95399, 2011-Ohio-1694, ¶ 1. The court below chose to believe that recovery could still exist for an injured worker like Houdek:

> Does [R.C. 2745.01] constrain common law employer tort as the *Kaminski* [*v. Metal & Wire Prods*. Co., 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066,] majority holds, or does it, as Justice Pfeifer predicts, abolish it? Taking the majority at its written word, we find merit to Houdek's appeal and reverse the trial court's judgment granting summary judgment in favor of Krupp and against both Houdek and the BWC. If the facts and circumstances of this case do not present genuine issues of material fact as to the existence of an employer tort, then none shall.

*Id.* at ¶ 38.

{¶ 36} I suppose that "none shall." The court below also wrote what the consequences would be if my dire evaluation of the law was indeed correct:

> As a cautionary note, if Justice Pfeifer is correct, Ohio employees who are sent in harm's way and conduct themselves in accordance with the specific directives of their employers, if injured, may be discarded as if they were broken machinery to then become wards of the Workers' Compensation Fund. Such a policy would spread the risk of such employer conduct to all of Ohio's employers, those for whom worker safety is a paramount concern and those for whom it is not. So much for "personal

14

responsibility" in the brave, new world of corporations are real persons.

*Id*. at ¶ 39.

**{¶ 37}** More's the pity.

_____

Friedman, Domiano & Smith Co., L.P.A., Stephen S. Vanek, David R. Grant, and Jeffrey H. Friedman; and Smith & Condeni, L.L.P., Joseph A. Condeni, and Stacey Walley, for appellee.

Reminger Co., L.P.A., Gregory G. Guice, Clifford C. Masch, and Brian D. Sullivan, for appellant.

Tucker Ellis, L.L.P., and Benjamin C. Sassé, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy, and Marc J. Jaffy, urging affirmance for amicus curiae Ohio AFL-CIO.

Gallon, Takacs, Boissoneault & Schaffer Co., L.P.A., Theodore A. Bowman, and Jonathan M. Ashton, urging affirmance for amici curiae Ohio Conference of Teamsters and Teamsters Local 20.

Paul W. Flowers Co., L.P.A., and Paul W. Flowers, urging affirmance for amicus curiae Ohio Association for Justice.

_____