[Cite as *Beary v. Larry Murphy Dump Truck Serv., Inc.*, 2014-Ohio-4333.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| JOSEPH BEARY | : | **JUDGES:** |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2013CA00240 |
| LARRY MURPHY DUMP TRUCK | : |  |
| SERVICE, INC. | : |  |
|  | : | O P I N I O N |
| Defendant-Appellee | | |

CHARACTER OF PROCEEDING:     Civil appeal from the Stark County Court of Common Pleas, Case No. 2010CV01412

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     September 29, 2014

APPEARANCES:

For Plaintiff-Appellant

DANIEL SUCHER
Young Sucher PLL
1001 Jaycox Road
Avon, OH 44011

For Defendant-Appellee

KENNETH CALDERONE
JOHN CHLYSTA
3737 Embassy Parkway
Akron, OH 44334

*Gwin, P.J.*

{¶1} Appellant appeals the November 15, 2013 judgment entry of the Stark County Court of Common Pleas granting appellee's motion for summary judgment.

*Facts & Procedural History*

{¶2} In October of 2009, appellee Larry Murphy Dump Truck Services, Inc. ("LMDT") had a contract to repave a parking lot at the Giant Eagle Grocery Store in Louisville, Ohio. The first day of the project involved blocking off, prepping, and paving one-half of the parking lot. The second day of the project involved moving barricades, prepping, and paving the remaining half of the parking lot. On the second day, foreman Ron Blackburn ("Blackburn") gave his crew members their job assignments. Blackburn was employed by Road Aggregate. Matt Hoopes was told to use a skid steer to clean dirt and debris from the remaining section of the parking lot before it was repaved. The skid steer, often called a "Bobcat," had a mechanical broom device to sweep dirt and debris from the area. The skid steer was owned by LMDT. Hoopes and appellant Joseph Beary ("Beary") were employed by LMDT.

{¶3} Appellant and another worker were assigned to stretch caution tape around the remaining parking lot section as a barricade to keep motorists from driving into the area where they would be paving. As appellant was tying caution tape to an overturned shopping cart, he was struck from behind by the skid steer, sustaining serious injuries. At the time of the accident the skid steer was in reverse and the operator did not know appellant was behind him. Appellant did not know the skid steer was headed in his direction because he had his back turned to the machine. The skid

steer was equipped with a backup alarm. However, on the day of the accident, the backup alarm was not working.

{¶4} Appellant brought suit against his employer LMDT for an intentional tort pursuant to R.C. 2745.01 and against Blackburn's employer, Road Aggregate, Inc., for negligence. Both LDMT and Road Aggregate, Inc. are owned by the same person, Larry Murphy. LMDT and Road Aggregate moved for summary judgment and the trial court granted both of their summary judgment motions on February 17, 2011. Appellant appealed the trial court's decision. In *Beary v. Larry Murphy Dump Truck, Serv. Inc.*, 5th Dist. Stark No. 2011-CA-00048, 2011-Ohio-4977, this Court affirmed the trial court's ruling. We found the reasoning in *Fickle v. Conversion Technologies, Int'l Inc.*, 6th Dist. Williams No. WM-10-016, 2011-Ohio-2960, to be persuasive and held that the backup alarm is not equipment safety guard pursuant to R.C. 2745.01(C). Further, that summary judgment was appropriate with regards with Road Aggregate because Blackburn was a loaned servant to LMDT and any negligence of Blackburn is not ascribable in respondeat superior to Road Aggregate.

{¶5} Appellant appealed this Court's ruling to the Ohio Supreme Court, asserting two propositions, the first focused on whether the backup alarm was an equipment safety guard under R.C. 2745.01(C) and the second focused on whether Ohio law requires an analysis of control as a factor in determining whether an employee is a loaned servant. The Ohio Supreme Court accepted appellant's appeal on the first proposition of law only. Thus, the only remaining claim is appellant's intentional tort claim against LMDT. The Ohio Supreme Court held this case in abeyance pending its decision in *Hewitt v. L.E. Myers Co.*, 8th Dist. Cuyahoga No. 96138, 2011-Ohio-5413.

After the Ohio Supreme Court decided the *Hewitt* case, the Court reversed and remanded this case to the trial court to "apply this court's decision in *Hewitt* to determine whether the backup alarm is an 'equipment safety guard.'" *Beary v. Larry Murphy Dump Truck Serv., Inc.*, 134 Ohio St.3d 359, 2012-Ohio-5626, 982 N.E.2d 691.

{¶6} On remand, the parties again briefed the issue in cross-motions for summary judgment. The trial court issued a judgment entry on November 15, 2013, granting summary judgment to LMDT. The trial court applied the *Hewitt* test and determined the backup alarm is not an "equipment safety guard" because the "alarm does not shield the operator or bystander from exposure to or injury by a dangerous aspect of the equipment. It serves only to alert or warn of the skid steer's approach." The trial court also found that even if the backup alarm is an equipment safety guard, no rebuttable presumption of intent to harm arises because there was no evidence that LMDT deliberately removed the alarm.

{¶7} LMDT appeals the November 15, 2013 judgment entry of the Stark County Court of Common Pleas and assigns the following as error:

{¶8} "I. THE TRIAL COURT ERRED BY DETERMINING THAT A BACKUP ALARM IS NOT AN EQUIPMENT SAFETY GUARD AS SET FORTH IN R.C. 2745.01(C).

{¶9} "II. THE TRIAL COURT ERRED BY FINDING THAT THERE WAS NO DELIBERATE REMOVAL OF A SAFETY GUARD WHEN IT WEIGHED THE FACTS AND IN ITS APPLICATIONS OF THE REBUTTABLE PRESUMPTION OF INJURY AS SET FORTH IN R.C. 2745.01(C)."

*Summary Judgment*

**{¶10}** Civ.R. 56 states, in pertinent part:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

**{¶11}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the

applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶12} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶13} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrates absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist. 1991).

I.

{¶14} Appellant contends the trial court erred in finding that the backup alarm in this case is not an equipment safety guard. Appellant argues the backup alarm is a protective device on a skid steer designed to make it safe and guard against the known danger of operating the machine in reverse.

{¶15} In *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, the Ohio Supreme Court was asked to determine whether "equipment safety guard" for purposes of R.C. 2745.01(C) includes only those devices on a machine that shield an employee from injury by guarding the point of operation of that machine. *Id.* The Supreme Court held that, as used in R.C. 2745.01(C), "equipment safety guard" means "a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment." *Id.* The Court rejected a broader interpretation that would include any generic safety-related items as such a broad interpretation "ignores not only the meaning of the words used but also the General Assembly's intent to restrict liability for intentional torts." *Id.* Further, the Court adopted the rationale found in *Fickle v. Conversion Technologies, Int'l Inc.*, 6th Dist. Williams No. WM-10-016, 2011-Ohio-2960, that while an equipment safety guard encompasses something more than an actual physical structure erected between the employee and the danger, it must be a device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment. *Id.* The Court thus determined that protective rubber gloves and sleeves are not equipment safety guards.

{¶16} In *Beyer v. Rieter Automotive North American*, 134 Ohio St.3d 379, 2012-Ohio-5627, 982 N.E.2d 708, the Ohio Supreme Court reversed the decision of the appeals court that found that face masks were equipment safety guards, and entered judgment in favor of the employer. In *Houdek v. Thyssenkrupp Materials, N.A., Inc.*, the Court determined that orange cones, reflective vests, and retractable gates are not equipment safety guards. 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253. The Supreme Court declined to accept cases in which appeals courts determined that the

following were not equipment safety guards: a trench box, a jog control and an emergency stop cable, a jib crane and an observation platform, and a tire bead and bead taper. *Barton v. G.E. Baker Construction*, 9th Dist. Lorain No. 10CA009929, 2011-Ohio-5704; *Fickle v. Conversion Technologies, Int'l Inc.*, 6th Dist. Williams No. WM-10-016, 2011-Ohio-2960; *Downard v. Rumpke of Ohio, Inc.*, 12th Dist. Butler No. CA2012-11-218, 2013-Ohio-4760; *Roberts v. RMB Ents., Inc.*, 12th Dist. Butler No. CA2011-03-060, 2011-Ohio-6223.

{¶17}  In this case, we find the backup alarm is not an equipment safety guard for purposes of R.C. 2745.01(C).  The backup alarm does not shield the operator or bystander from exposure or injury by a dangerous aspect of the skid steer and serves only to alert or warn of the skid steer's approach.  An operator or bystander is not shielded from injury by the mere existence of the backup alarm.  While the backup alarm may alert a bystander before he enters the zone of danger, it does not keep the bystander away from this zone of danger and does nothing to stop the skid steer from operating when an individual gets close to the machine.  As noted by the trial court, if a bystander were directly behind the skid steer while it was backing up, the alarm would merely keep beeping while the skid steer ran over the bystander.  While the backup alarm may make the skid steer safer, it does not shield the operator or a bystander from exposure to or injury by a dangerous aspect of the skid steer.  As noted by the court in *Fickle*, the standard which the Ohio Supreme Court adopted in *Hewitt*, an equipment safety guard is more than a device that alerts of a condition or makes a machine safer. 6th Dist. Williams No. WM-10-16, 2011-Ohio-2960.

{¶18} Appellant argues the instant case is analogous to *Pixley v. ProPak Indus.*, 6th Dist. Lucas No. L-12-1177, 2013-Ohio-1358, and encourages this Court to adopt the reasoning in that case, in which the Sixth District found that a safety bumper on a transfer car is clearly designed to protect employees from a dangerous aspect of the equipment and is thus an equipment safety guard. We first note that the employer's appeal in *Pixley* has been accepted by the Ohio Supreme Court. Further, we find the facts in this case are not analogous to those in *Pixley*. As noted above, the backup alarm does not shield the operator or bystander from exposure or injury by a dangerous aspect of the skid steer and serves only to alert or warn of the skid steer's approach.

{¶19} The backup alarm in this case does not constitute an "equipment safety guard" for purposes of R.C. 2745.01(C). Consequently, appellant failed to establish a rebuttable presumption pursuant to R.C. 2745.01(C) and appellee is entitled to a judgment as a matter of law. Appellant's first assignment of error is overruled.

II.

{¶20} Appellant further argues the trial court erred by finding, assuming arguendo that the backup alarm is an equipment safety guard, that there was no evidence of deliberate removal of a safety guard. We disagree.

{¶21} There is a rebuttable presumption of employer intent upon a showing of the "deliberate removal * * * of an equipment safety guard * * * if an injury * * * occurs as a direct result." R.C. 2745.01(C). The Ohio Supreme Court recently held that, in order to receive the benefit of the rebuttable presumption that an employer acted with deliberate intent to cause the plaintiff's injury, a plaintiff must establish that the employer "makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that

guard." *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795. The Court stated that removal may encompass more than "physically removing a guard from equipment and making it unavailable, such as bypassing or disabling the guard." *Id.*

**{¶22}** The Supreme Court further found in *Houdek v. Thyssenkrupp Materials, N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, that, in the absence of deliberate removal, a plaintiff must establish that the employer acted with specific intent to injure him. In *Houdek*, the Court rejected the argument that the intent inquiry was an objective one satisfied by an employer's mere knowledge of a hazardous condition, as such would be covered by workers' compensation. See *Broyles v. Kasper Machine Co.*, 6th Cir. No. 12-3464, 2013 WL 827713 (March 7, 2013). Even if an employer places an employee in a potentially dangerous situation, there must also be evidence that either management or the supervisor deliberately intended to injure the employee for R.C. 2745.01(C) to apply. *Houdek*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253.

**{¶23}** Even if we found that the backup alarm is an equipment safety guard, we cannot find any evidence the employer deliberately removed it. Appellant asserts that the evidence that the backup alarm was disconnected and did not work for three to six months was enough to establish the rebuttable presumption of intent. Alternatively, that the affidavit and/or testimony of Steve Mumford ("Mumford") demonstrates that an issue of fact exists as to deliberate intent.

**{¶24}** As specifically stated in *Houdek*, the Ohio Supreme Court rejected the argument that the intent inquiry was an objective one satisfied by an employer's mere

knowledge of a hazardous condition. Accordingly, evidence that the alarm was disconnected and did not work is not enough to establish the rebuttable presumption without evidence of deliberate intent. We further find the affidavit or testimony of Mumford is insufficient to establish deliberate intent. Mumford, a truck driver, stated that he personally observed the wires disconnected in the backup alarm. However, Mumford also stated that when he saw the wires disconnected, he did not tell anyone or take a closer look. Mumford could not say why they were disconnected or who disconnected the wires. Mumford did not state that Blackburn or any other manager deliberately removed the backup alarm or deliberately disconnected a wire. Further, when asked why he felt the foreman deliberately intended to injure him on the day of the accident, appellant testified that because the foreman knew the backup alarm was not functional and therefore put him at risk. However, appellant also testified that he didn't "think his intentions was to deliberately intend to injure me per se" and stated that he is not aware of any evidence that suggests before the day of the accident the foreman planned for him to be injured.

{¶25} After reviewing the evidence, we cannot find any indication that the employer made a deliberate decision to lift, push aside, take off, or otherwise eliminate the backup alarm. Appellant's second assignment of error is overruled.

{¶26} Based on the foregoing, appellant's assignments of error are overruled and the November 15, 2013 judgment entry of the Stark County Common Pleas Court is affirmed.

By Gwin, P.J.,

Farmer, J., and

Delaney, J., concur