[Cite as *Bechtel v. Multi-Cast Corp.*, 2024-Ohio-3426.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

Kevin L. Bechtel et al.

Appellants

v.

Multi-Cast Corporation et al.

Appellees

Court of Appeals No.    F-23-010

Trial Court No.  22 CV 0085

**DECISION AND JUDGMENT**

Decided:  September 6, 2024

* * * * *

Kevin J. Boissoneault and Jonathan M. Ashton, for appellants.

Mark S. Barnes and Robert L. Solt, for appellees.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal from a judgment by the Fulton County Common Pleas granting summary judgment in favor of appellee Multi-Cast, LLC ("MCL"). For the reasons that follow, the trial court's judgment is affirmed.

**Statement of the Case**

{¶ 2} On June 22, 2018, appellants Kevin Bechtel and Debra Bechtel ("appellants") filed a lawsuit in the trial court seeking damages for injuries sustained by Kevin Bechtel (Bechtel"), on June 24, 2016, in the course of and arising out of his employment with Multi Cast LLC ("MCL"). The court docketed the case as No. 18-CV-00105. Appellants' complaint alleged that MCL committed an employer intentional tort under R.C. 2745.01(A) and (C) by: 1) knowingly allowing a dangerous work situation; 2) knowingly, intentionally, and deliberately requiring Bechtel to work on a saw lacking "necessary equipment safety guards of anti-kickback devices and spreader;" 3) knowingly, intentionally, and deliberately requiring Bechtel to work on the aforementioned saw despite knowing serious injury was substantially certain to occur; and 4) knowingly, intentionally, and deliberately failing to adequately train Bechtel. In the alternative, appellants alleged that Bechtel's injury resulted from MCL's negligence. MCL answered appellants' complaint, and the case proceeded according to the trial court's scheduling order.

{¶ 3} MCL moved the court for summary judgment on August 22, 2019, after the parties conducted extensive discovery. On January 10, 2020, the trial court denied the motion for summary judgment on the ground that "numerous material and relevant facts [were] still in dispute."

{¶ 4} On April 12, 2021, MCL moved the court to reconsider its summary judgment decision. On June 2, 2021, the court scheduled a hearing on the motion for

2.

reconsideration, which was to occur on June 21, 2021. On June 22, 2021, appellants voluntarily dismissed their complaint.

{¶ 5} On June 16, 2022, appellants refiled their complaint, in case No. 22-CV-0085, making the same allegations that were set forth in the original complaint. MCL timely answered. On October 5, 2022, appellants moved to transfer the file from case No. 18-CV-00105 to the present case, which motion MCL opposed. On November 1, 2022, the court granted appellants' motion, thereby transferring all documents from case No. 18-CV-00105 to the present case. Neither party conducted any additional discovery, and discovery closed on June 19, 2023, according to the court's February 21, 2023, order.

{¶ 6} On August 14, 2023, MCL filed its motion for summary judgment based on the record documents filed in case No. 18-CV-00105, which included depositions of Bechtel; former floor operation manager and current area supervisor Jeffrey Williams; former MCL general manager Michael Schnipke; and former MCL human resource manager Nicole Verity.  Also contained in the record was the August 11, 2023 affidavit of William Martin, who is the Direct and Vice Chairman of Evan Industries, which company is the sole shareholder of MCL. On or about September 11, 2023, appellants filed a memorandum in opposition to MCL's summary judgment motion. Appellants supported their memorandum in opposition with a May 23, 2017, report of the Bureau of Workers' Compensation Safety Violations Investigation Unit (SVIU); a transcript of a hearing before the Industrial Commission of Ohio on Bechtel's application for a Violation of a Specific Safety Requirement (VSSR); the Industrial Commission's order

3.

pertaining to Bechtel's VSSR application; copies of two owner's manuals regarding the table saw at issue; and a September 8, 2023, affidavit of appellants' expert, Gerald Rennell. On October 9, 2023, MCL filed its reply memorandum.

{¶ 7} On October 26, 2023, the trial court granted MCL's motion for summary judgment. Appellants timely appealed the trial court's decision.

**Statement of the Facts**

{¶ 8} The facts of this case, viewed in a light most favorable to appellants, are as follows. Multi-Cast Corporation ("MCC") is solely owned by four individual shareholders: Michael D. Jewell, Robert C. Stewart, Timothy E. Moxim, and Randall E. Vonier. In 2015, MCC defaulted on its obligations to its senior secured lenders, causing it to cease operations and to surrender its assets to PNC Bank.

{¶ 9} On March 2, 2015, MCL was incorporated as a Michigan limited liability company duly organized and authorized to do business in the state of Ohio. MCL's sole shareholder is Evans Industries. On March 9, 2015, MCL purchased the assets of MCC for cash. Prior to the asset sale, MCL and MCC had no ongoing business relationship. The purchase agreement provides that MCL expressly disclaims any and all potential liabilities of MCC. The purchase was for cash and involved no transfer of stock. Upon completion of the asset purchase, MCL provided new corporate management and directors. Although no employee of MCC became an officer or director of MCL, many of MCC's employees – including management-level employees – remained with the

4.

business and became employees of MCL. No past owner of MCC is involved in any way with the business of MCL.

{¶ 10} MCL is a manufacturer of aluminum castings. As part of the assets purchased by MCO from MCC on March 9, 2015, MCL acquired a 1943 Delta Model 1450 10" Tilting Arbor Unisaw ("table saw"), which had been in use since the mid-1940s. The instruction manual for the machine contains "Instructions for Adjusting and Operating the No. 1450 Tilting Arbor Saw," together with "Operating and Maintenance Instructions for 10" Circular Saw Guards." The instructions related to the circular saw guards explain that

> [n]o one saw guard is suitable for all types of work, consequently *it is important that a customer obtain that type of guard best suited for his particular work*. The Unisaw Tilting Arbor Circular Saw was designed with that end in view, therefore, *provisions were made for mounting* splitters, splitter guards, basket swing guard, solid hood guard, and combinations of the above.

(Emphasis added.) These instructions then go on to describe "the different units available."

{¶ 11} In 2013, MCC purchased and installed a Biesemeyer Blade Guard System on the table saw. According to the Biesemeyer Blade Guard System manual, the system came with a blade guard and a splitter with an anti-kickback device that attached to the saw behind the blade guard.

{¶ 12} Over the years, employees of MCC -- and then MCL -- would at times take the splitter/spreader and anti-kickback device off the table saw, believing that the device

5.

made the operation of the table saw more dangerous and less efficient. Bechtel testified that he never saw a spreader or anti-kickback device on the MCL table saw.

{¶ 13} MCL hired Bechtel in mid-April 2016 to work in maintenance and repair. Bechtel worked in maintenance and repair for most of his life and learned how to safely operate table saws while attending vocational school at Macomber High School. Bechtel bought his own table saw in 1991 and has had a woodworking shop at his home containing a number of power saws, including a table saw, for the past four decades.

{¶ 14} On June 16, 2016, Bechtel received training from then-human resource manager Nicole Verity on MCL's Personal Protective Equipment Policy. The training material presented by Verity on June 16, 2016, provides that gloves are required only in "the melt room, finishing, welding, and pouring tasks."

{¶ 15} On June 23, 2016, Bechtel operated the table saw -- which was equipped with a blade guard but without a splitter/spreader or anti-kickback device -- for about an hour, cutting strips of lightweight insulation board. The next day, Bechtel continued cutting the 3-foot-long insulation boards into 2-inch-wide strips. As he was cutting the last two-inch-wide strip on the insulation board, with approximately 1.5 inches left to the edge of the board, the 1.5-inch strip began to chatter. To prevent the chattering, Bechtel placed his left hand on the saw's table behind the blade with his left index finger up against the edge of the 1.5-inch strip of board, and shortly thereafter he made contact with the saw blade, amputating his left index finger and injuring his left middle finger.

6.

**{¶ 16}** Bechtel was wearing gloves at the time of his accident. He was aware of the danger of using gloves while operating a table saw because he knew that loose clothing could get caught and pulled into the saw blade. Bechtel recalls very little about how his injury occurred. He acknowledges that he should not have been wearing gloves while operating the table saw. When asked what could have been done to prevent this injury, Bechtel stated on a portion of the injury report, "Don't wear gloves is all I can think of."

**{¶ 17}** On the date of the injury, MCL was a complying state fund employer under Ohio's workers' compensation law, paying premiums to the Ohio Bureau of Workers' Compensation. Bechtel filed a workers' compensation claim in connection with the June 24, 2016 injury, and was paid compensation and medical benefits to which he was entitled under Ohio's workers' compensation law.

**{¶ 18}** In an order dated February 2, 2018, a hearing officer granted Bechtel's VSSR application after determining: 1) that MCL violated Ohio Admin. Code Sections 4123:1-5-08(D)(1)(b) and (c), because the saw did not have an anti-kickback or spreader device in place at the time of Bechtel's injury; and 2) that use of an anti-kickback or spreader device would have prevented Bechtel's injury.

### Assignments of Error

**{¶ 19}** On appeal, appellants assert the following assignments of error:

I. The trial court erred when it granted summary judgment in favor of Appellee Multi Case, LLC.

7.

A. Appellee's failure to install, replace, or repair an equipment safety guard in violation of a manufacturer\s requirements and OSHA and Ohio Safety regulations constitutes deliberate removal of an equipment safety guard.

B. The trial court erred in failing to apply the rebuttable presumption of intent to injure under R.C. § 2745.01©.

C. Regardless of whether Appellant established the rebuttable presumption under R.C. § 2745.01(C), there still remain genuine issues of material fact as to whether Appellee acted with deliberate intent to cause injury under R.C. § 2745.01(A).

**Law and Analysis**

**Standard of Review**

{¶ 20} Appellate courts review summary judgment de novo, employing the same standard as the trial court. *King v. Buildtech Ltd. Construction Development*, 2023-Ohio-1092, ¶ 22 (6th Dist.), citing *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996). (Additional citation omitted.) Summary judgment is proper only when the moving party demonstrates:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

8.

*Id.*, citing *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66 (1978); Civ.R. 56(E).

{¶ 21} "A party seeking summary judgment must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact." *Id.* at ¶ 23, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996); *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988), syllabus. "When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact." *Id.*, citing Civ.R. 56 (E) and *Riley v. Montgomery,* 11 Ohio St.3d 75, 79 (1984). "A 'material' fact is one that would affect the outcome of the suit under the applicable and substantive law." *Id.*, citing *Russell v. Interim Personnel, Inc.*, 125 Ohio App.3d 301, 304 (6th Dist. 1999). (Additional citations omitted.)

### Intentional Tort Law

{¶ 22} "Under R.C. 2745.01(A), an employer is not liable for damages resulting from an intentional tort committed during the course of a worker's employment unless the worker proves that the employer 'committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.'" *King* at ¶ 39; R.C. 2745.01(A). "'Substantially certain' means that the employer acted with 'deliberate intent to cause an employee to suffer an injury…." *Id.*, citing R.C. 2745.01(B). "If the worker's injury was caused by the employer's '[d]eliberate removal' of an 'equipment

9.

safety guard,' the worker is entitled [under R.C. 2745.01(C)] to a rebuttable presumption that 'the removal … was committed with the intent to injure another ….'" *Id.*, citing R.C. 2745.01(C).

{¶ **23**} "[T]he General Assembly's intent in enacting R.C. 2745.01, as expressed particularly in 2745.01(B), is to permit recovery for employer intentional torts only when an employer acts with specific intent to cause an injury, subject to [the rebuttable presumption in subsection] (C)…." *Kaminski v. Metal & Wire Prods. Co.*, 2010-Ohio-1027, ¶ 56; *see also Houdek v. ThyssenKrupp Materials N.A., Inc.*, 2012-Ohio-5685, ¶ 25 ("absent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's remedy is within the workers' compensation system"). As stated by the Ohio Supreme Court:

> R.C. 2745.01 appears to harmonize the law of this state with the law that governs a clear majority of jurisdictions. '[T]he common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury. (Footnote omitted.)' 6 Larson's Workers' Compensation Law (2008), Section 103.03.

*Houdek* at ¶ 23, citing *Kaminski* at ¶ 99-100.

{¶ **24**} The General Assembly has not defined "equipment safety guard" or deliberate removal" for purposes of R.C. 2745.01(C). *Bliss v. Johns Manville*, 2021-Ohio-1673, ¶ 29 (6th Dist.), citing *Fickle v. Conversion Techs. Internatl., Inc.*, 2011-

10.

Ohio-2960, ¶ 24 (6th Dist.) "Interpretation of an undefined statutory term – and whether something meets the definition of that term – is a matter of law, not a question of fact." *King* at ¶ 40, citing *Bliss* at ¶ 29, citing *Fickle* at ¶ 24 (6th Dist.)

{¶ 25} The Ohio Supreme Court has held that an "equipment safety guard" is "a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment," and that the "'deliberate removal' of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard." *Hewitt v. L.E. Myers Co.,* 2012-Ohio-5317, ¶ 2. "'[D]eliberate removal' … may be described as a careful and thorough decision to get rid of or eliminate an equipment safety guard." *Id.* at ¶ 29. "Although 'removal' may encompass more than physically removing a guard from equipment and making it unavailable, such as bypassing or disabling the guard, an employer's failure to train or instruct an employee on a safety procedure does not constitute the deliberate removal of an equipment safety guard." *Id.* at ¶ 29, citing *Fickle* at ¶ 45.

{¶ 26} The Twelfth District Court of Appeals has narrowly interpreted the law to mean that in order for there to be a "deliberate removal" "there must be both a deliberate decision – a decision reached after careful and thorough consideration – and actual removal – the elimination of the existing safety guard." *Camara v. Gill Dairy, LLC*, 2023-Ohio-2339, ¶ 23.

{¶ 27} The Seventh and Third District Courts of Appeal have interpreted "deliberate removal" more broadly to include not just acts but also omissions involving a

11.

safety guard. The Seventh District Court, in *Wineberry v. N. Star Painting Co.*, 2012-Ohio-4212 (7th Dist.), stated, in dicta, that "deliberate removal not only encompasses removing safety equipment, but also the failure to attach safety equipment provided by the manufacturer." *Id.* at ¶ 38. And the Third District Court, in *Thompson v. Oberlander's Tree & Landscape Ltd.*, 2016-Ohio-1147 (3d Dist.), determined that "an employer deliberately removes an equipment safety guard when it makes a deliberate decision not to either repair or replace an equipment safety guard that is provided by the manufacturer and/or required by law or regulation to be on the equipment." *Id.* at ¶ 34.

{¶ 28} Although this court has not previously specified whether it would define "deliberate removal" as including safety guard omissions in addition to outright removal of an existing safety guard, in *Creveling v. Lakepark Industries, Inc.*, 2021-Ohio-764 (6th Dist.), we expressly declined to broaden the definition beyond that stated in *Wineberry* to include the failure to attach safety equipment, whether or not supplied by the manufacturer. *Id.* at ¶ 64.

{¶ 29} As related to the current case, we agree with the court in *Camara*, wherein it stated that "the failure to repair or replace a safety guard is akin to permitting a hazardous condition to exist," and that "an employer's mere knowledge of a hazardous condition is insufficient to show intent to injure under R.C. 2745.01." *Camara* at ¶ 28, citing *Houdek*, 2012-Ohio-5685, ¶ 24 (stating that "the General Assembly intended to limit claims for employer intentional torts to situations in which an employer acts with the 'specific intent' to cause injury to another"); *see also Hunter v. Cole Tool & Die*

12.

*Company*, 2023-Ohio-2131 (holding that the employer's knowledge about employees bypassing a safety guard, combined with a failure to act, does not fall within the scope of R.C. 2745.01(C)).

### R.C. 2745.01(C) does not apply to Bechtel's case.

{¶ 30} Bechtel states that "[o]ne issue in this appeal is whether [CML] deliberately removed an equipment safety guard when it failed to install, repair, or replace the splitter and anti-kickback fingers." Here, however, the record contains no evidence that MCL deliberately removed an equipment safety guard from the table saw, triggering a rebuttable presumption of intent to injure under R.C. 2745.01(C). Even assuming, without deciding, that the spreader/anti-kickback device was an "equipment safety guard," and that it was on the table saw during MCL's ownership, there is no evidence of "deliberate removal" by MCL.

{¶ 31} Although there is evidence that the spreader/anti-kickback device that was purchased and installed by MCC in 2013 was removed by various employees (including manager/supervisor Jeffrey Williams) while they operated the saw, there is no testimony from any witness in this case that the removal of the device occurred at the direction of management. At most, the evidence shows that MCL was aware that the device was missing. Such evidence is insufficient to find that the device was removed by MCL as the result of a "deliberate decision to lift, push aside, take off, or otherwise eliminate" the spreader/anti-kickback device. *Hewitt*, 2012-Ohio-5317, at ¶ 2. Nor could such evidence support a finding that MCL made "a careful and thorough decision to get rid of or

13.

eliminate" the device. *Id.* at ¶ 29. Therefore, the presumption of specific intent to injure in R.C. 2745.01(C) does not arise.

{¶ 32} In rendering this decision, we need not consider the determination set forth in *Wineberry,* 2012-Ohio-4212, at ¶ 38, that "deliberate removal not only encompasses removing safety equipment, but also the failure to attach safety equipment provided by the manufacturer." This is because there is no evidence to show that safety equipment was actually provided by the saw's manufacturer when the saw was purchased in the 1940s. The manufacturer's instructions that Bechtel references in his opposition state only that "it is important that a customer obtain that type of guard best suited for his particular work," and that "provisions were made [as part of the saw apparatus] for mounting splitters, splitter guards, basket swing guard, solid hood guard, and combinations of the above." These instructions indicate, at most, a recommendation by the manufacturer that a guard be purchased in conjunction with the purchase of the saw and not that any guard was actually provided by the manufacturer. The decision in *Wineberry* is therefore inapplicable to the facts of this case.

**Bechtel did not show that MCL had the requisite intent to injure.**

{¶ 33} Bechtel argues that even if he is not entitled to the rebuttable presumption under R.C. 2745.01(C), MCL's actions in removing and failing to install, repair, or replace required equipment safety guards on the subject table saw evidence its deliberate intent under R.C. 2745.01(A). We disagree that evidence of such actions amounts to evidence that MCL specifically intended to injure any of its employees. The most that

14.

could be found is that MCL was aware that the splitter/anti-kickback device was missing and that it knew that this presented its employees with a dangerous condition. But there is no evidence that by not installing, repairing, or replacing the device, MCL specifically intended to injure its employees. Accordingly, even construing the evidence in a light most favorable to Bechtel, there is no genuine issue of material fact as to whether MCL had the specific intent to injure. *See Houdek* at ¶ 23, citing *Kaminski* at ¶ 56, 99-100; *see also Hubble v. Haviland Plastic Products Co.*, 2010-Ohio-6379, ¶ 7, 9 (3d Dist.) (finding that although the employer had received an OSHA citation and acted with reckless disregard for the safety of its employees, such conduct is not actionable under R.C. 2745.01 without evidence of an actual intent to cause injury); *Pastroumas v. UCL, Inc.*, 2016-Ohio-4674, ¶ 30 (1st Dist.) ("failure to provide proper fall or other safety protection or to adhere to OSHA regulations does not create a genuine issue of fact as to whether an employer committed an intentional tort absent proof of a deliberate, conscious attempt to injure").

{¶ 34} For all of the foregoing reasons, Bechtel's sole assignment of error is found not well-taken.

**Conclusion**

**{¶ 35}** The judgment of the Fulton County Court of Common Pleas is affirmed.

Appellant is to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.

_____
JUDGE

Myron C. Duhart, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.